**Elizabeth G. LOCKWOOD et al., Appellants,**

v.

**Howard Wayne LISBY, Appellee.**

**No. 17277.**

Court of Civil Appeals of Texas, Fort Worth.

Feb. 4, 1972.

Rehearing Denied March 3, 1972.

R. V. Nichols, and John L. McLain, Fort Worth, for appellants.

Lattimore, Campbell, Beadles, Wood & Meier, and Darrell L. Keith, Fort Worth, for appellee.

OPINION

MASSEY, Chief Justice.

Judgment for an amount stipulated as damages because of a certain trustee's sale which divested appellee Lisby of title to realty was rendered for him against Mrs. Lockwood, trustee, and Mrs. Young, mortgagee, on the theory that the sale was in breach of contract. Mrs. Young and Mrs. Lockwood appealed.

Affirmed.

■  Correctly, we believe, the trial court treated Lisby's injury as vicarious, i. e., because his loss would have been one suffered by Mrs. Young's mortgagors— who had transferred and assigned to Lisby their rights in and to the subject property —had there been no transfer and assignment. The test on trial was the matter of wrongful infringement of the rights of these mortgagors under the Deed of Trust contract executed by them. A consequence would be that the mortgagors, considered as plaintiffs, would be entitled to have the trustee's sale set aside as avoidable for irregularity or defect, or alternatively for damages for conversion, because of wrongful infringement. As privy successor to the mortgagors the same right existed in Lisby. See 143 A.L.R. 528, 533–536, Annotation: "Right to attack voidable sale under power in mortgage, as personal to mortgagor (or owner of equity of redemption), or as exercisable by his heir, grantee, creditor, or other person claiming under or through him." Also, see 39 Tex. Jur.2d, p. 217, "Mortgages and Trust Deeds", Sec. 157, "Who may attack sale".

There was such infringement if there was not that satisfaction of an essential prerequisite giving rise to the mortgagee's authority to have the property sold under authority of the Deed of Trust. Of course, the opposite would be true if there was a waiver of any necessity to satisfy the prerequisite condition, or if there was justifiable excuse why such condition was not satisfied.

Where there is an installment note secured by a Deed of Trust on realty and where some past due installments remain unpaid and there is reliance thereupon as the reason and contractual justification to conduct a sale of the realty under authority of the trust deed, there is not *in the ordinary situation* a satisfaction of an essential prerequisite giving rise to authority for such a sale absent a "notice" to the debtor that unless he paid such past due installments the holder of the note would accelerate the maturity of the note—affording the debtor an opportunity to remedy his breach. The *ordinary situation* of which we speak is one in which the parties' contract is one which provides that failure to pay the note, or any installment therein promised, when due, shall, *at the election of the holder,* mature the note, and it shall at once become due and payable and the Deed of Trust Lien shall become subject to foreclosure proceedings, etc. By reference to the installment note and Deed of Trust in the situation of the instant case we find they demonstrate that there is no deviation from the *ordinary situation* described. See 159 A.L.R. 1077, 1080, 1092, Annotation: "Acceleration of note or mortgage as automatic or optional".

In Jernigan v. O'Brien, 303 S.W.2d 515 (Austin Tex.Civ.App., 1957, no writ hist.) Associate Justice Hughes analyzed many cases in arriving at a proper test of the "notice" required by law in order to give rise to authority for such a trustee's sale. His conclusion was that it must be such as affords opportunity to remedy the breach of which complaint is made and also brings home to him in default that failure to remedy the breach would accelerate the maturity of the note and authorize foreclosure of the Deed of Trust under the power of sale therein provided. To the same effect, at least in respect to the requirement of "notice" of the exercise of an option to accelerate, is Covington v. Burke, 413 S.W.2d 158 (Eastland Tex.Civ.App., 1967, writ ref., n. r. e.). See also Fraser v. Kay, 251 S.W.2d 754 (San Antonio Tex.Civ.App.,

1952, no writ hist.) and Erickson v. Rocco, 433 S.W.2d 746 (Houston Tex.Civ.App. (14) 1968, writ ref., n. r. e.). The matter is given attention in 49 Tex.Law Review, p. 1085, "Nonjudicial Foreclosure Under a Deed of Trust: Some Problems of Notice", by David P. Cotellesse, beginning on p. 1089, with notation of two earlier cases which hold to the contrary of those we have cited. See also the discussion of these cases in 21 Southwestern Law Journal 704, "MORTGAGES—Deeds of Trust —The Optional Acceleration Clause and Notice".

It is obvious in the instant case that there was not any satisfaction of the requirement of "notice" by Mrs. Young to her mortgagors of her intention to elect, or election, to exercise the contractually provided option to accelerate payments provided to be made in the future on the mortgage note. Neither presentment nor demand for payment of past due installments or for the total amount owing on it, as accelerated, was ever made.

Our concern in this case is related to "notice" as applied to a prerequisite contractual condition (by construction) upon which right to conduct any trustee's sale is made to depend. Specifically, we are concerned with "notice of intention to accelerate, or of acceleration, of obligation to pay an indebtedness evidenced by note. This "notice" is to be distinguished from a "notice of trustee's sale", a different albeit an associated transaction in that authority to conduct the sale depends not only upon regularity of the notice of sale but also upon propriety and validity of the antecedent notice of acceleration of payments due as evidenced by note. It was because of the *unexcused want of "notice"* relative to such an acceleration that the trial court rendered judgment in this case.

Mortgagors, who had purchased the property from Mrs. Young, became woefully derelict in paying the prescribed monthly installments on the mortgage note. In consequence, Mrs. Young, resident in

another state, wrote them many times. The last few of her letters were not answered. She subsequently learned that the mortgagors had moved away from the premises. From such neighbors of whom inquiry was made the mortgagors' whereabouts could not be ascertained. It was learned from the telephone company that they had a telephone with an unlisted number. Decision was made to post notices of a trustee's sale without any further effort to communicate.

An important element is the fact that every letter Mrs. Young ever mailed to her mortgagors was apparently delivered. In any event none of the letters were ever returned by the Post Office Department. By none of her letters did Mrs. Young ever give "notice" of her intention to accelerate, nor of acceleration of the note, so that the entire balance was declared due. There was not a "demand" therefor made upon the mortgagors.

No one interested, other than Mrs. Young and the trustee who conducted the sale, had actual notice of the sale until after it had been made.

We are of the opinion that the disposition of the case is to be controlled by deciding the question of whether the failure in respect to giving "notice" relative to the exercise of the mortgagee's option to accelerate was excused. In other words were the circumstances such that satisfaction of the constructive contractual provision relative thereto proper to be treated as unnecessary under principles of equity? See 66 C.J.S. Notice § 14, Necessity of Notice—Excuse, p. 652. In this connection it is immediately apparent that Mrs. Young and Mrs. Lockwood, trustee, had the burden of proof, the burden to show that giving "notice" would have availed nothing and would not have served a useful purpose.

We believe it obvious from what we have said that the circumstances made the issue of "excuse" a factual question,

one to be resolved as a question of fact by the fact-finder in the case. Since the burden of proof was on Mrs. Young and Mrs. Lockwood, the court, as fact-finder, was entitled to find that such burden was not discharged. Since the issue was one of fact the opposite finding could not be compelled; thus, any proper complaint would necessarily be that the court's finding of "excuse" was so against the great weight and preponderance of the evidence as to be clearly wrong.

Actually no point of error raises such contention, but even if raised it would be overruled. Apparently the mail was at all times deliverable, and before proceedings were instituted the parties themselves had adopted the use of mail for their communication. Though the stipulated testimony of one of the mortgagors might be properly treated as an admission by him that if "notice" had reached him by mail he would have done nothing to satisfy any demand made of him by the mortgagee, the other mortgagor, his wife, admitted nothing. Though prior to the time of the proceedings they had transferred and assigned their interest in the property to Lisby there necessarily existed a question of their liability, not only to Mrs. Young but perhaps to Lisby. They could have been, but were not, made parties to this very suit. Under the circumstances the admission, aforementioned, by one mortgagor constituted a mere conclusion. The fact-finder was entitled to disregard it in the determination of the issue of excuse.

From what we have written, hereinabove, (and with a disregard of the admission against interest) there is no doubt of the propriety of affirmance of the judgment had the original mortgagors been plaintiffs. Since they were not parties to the suit, Lisby, as their privy and successor, would normally be entitled to the same affirmance in their place and stead. The question would exist, however, as to whether anything chargeable against Lisby would inhibit the recovery or operate in estoppel.

Of course Lisby was negligent, in that after receiving the property interest of the mortgagors, pursuant to which (as between himself and the mortgagors) he agreed to assume all the obligations of the mortgage, note and Deed of Trust, he never advised Mrs. Young despite the fact that there was plenty of time within which he could have done so. He was furthermore negligent in that he never made any payment accruing after his ownership nor any of the past-due payments owing at time of his purchase from the mortgagors. Were the matter one which rested in equity it might be said that Lisby's hands were far from clean. However, as applied to the essential matter at issue, the authority to sell the property pursuant to contract of the parties, we have a case at law in which equity plays no part.

The first knowledge of Mrs. Young and/or Mrs. Lockwood, trustee, that Lisby even existed was the day after the trustee's sale when he appeared and made his interest known. However, this circumstance alone, there being no proof that Lisby was aware that such sale pended prior to its actual accomplishment, would not alter the legal situation already discussed. Had Lisby known of the impending sale before it occurred it may be that equity would have seized upon the transaction and under one or more of its maxims entitled the court to deny any relief to Lisby. There was an absence of proof in this respect.

Since no "notice" relative to acceleration of the mortgagors' indebtedness by note was owed Lisby there could not have been any obligation by Mrs. Young to have provided such. Want of "notice" to Lisby might be said to be excused as a matter of law for no entitlement thereto was ever arisen. The "exposed" position of Lisby, of his own making, was this: there would have been no defect in the trustee's authority to conduct the sale had there been "notice" in the material respect to the mortgagors who had sold to him, whether Lisby be informed of such or not. If the mortgagors had been the recipient of such "no-

tice" but had never notified Lisby the mortgagors' failure to do so might have had an effect on rights and liabilities between him and the mortgagors as a consequence of Lisby losing his property interest by the trustee's sale. However, the mortgagors having not been the recipient of any "notice" relative to acceleration—and the sale subject to attack by them and by Lisby as their privy—Lisby could not have any claim against them. His case entitled him to bring and prosecute the action as the contractual privy successor to the rights of the mortgagors. The legal situation is not distinguishable from what it would have been if Lisby had purchased from the mortgagors, on the day following the trustee's sale, their interest in the property, along with any cause of action arisen out of the conduct of the sale of it by the trustee.

We believe our discussion covers all the points of error presented. In any event they have been severally considered and are all overruled.

Judgment is affirmed.